## FEDERAL DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY - TRENTON

| | |
|---|---|
| Gaiatop LLC and Xiantaoshiangsenshangmaoyouxiangongsi a/k/a Gaiatop )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>Shenzhen Jisu Keji Youxiangongsi a/k/a Jisulife-NA and Xiangfu Li )<br>)<br>)<br>Defendants. )<br>) | Civil Action No.<br><br>Jury Trial Demanded |

### COMPLAINT

Plaintiffs Gaiatop, LLC and Xiantaoshiangsenshangmaoyouxiangongsi a/k/a Gaiatop, ("Gaiatop" and "Xiantao") respectively and "Plaintiffs" collectively) by and through their undersigned attorney, hereby brings this action against Defendants Shenzhen Jisu Keji Youxiangongsi a/k/a Jisulife-NA and Xiangfu Li ("Jisulife-NA" and "Li" respectively or "Defendants" collectively) (i) for damages against Defendants for violating Sections 1 & 2 of the Sherman Act, (ii) for a declaratory judgment that U.S. Patent Nos. 11,635,083, 11,920,602, 11,859,625, 11,754,080, 11,719,250, 11,795,947 ("the '083 Patent," "the '602 Patent," "the '625 Patent," "the '080 Patent," "the '250 Patent" and "the '947 Patent" respectively)[1] and U.S. Design Patent No.D886,982 ("the D982 Patent," *Exhibit 2*) are invalid and/or unenforceable because of Defendants' violation of the antitrust laws and their misuse of these patents, (iii) a declaratory judgment that the Patents in dispute are not/cannot be infringed by Plaintiffs' products, (iv) a declaratory judgment that the Patents in dispute are invalid because of failure to

---

[1] The '083 Patent, the '602 Patent, the '625 Patent, the '080 Patent, the '250 Patent and the '947 Patent belong to the same patent family and are directed to various aspects of a neck fan. A copy of the '083 Patent and copies of the claims of the '602 Patent, the '625 Patent, the '080 Patent, the '250 Patent and the '947 Patent are attached as *Exhibit 1*.

1

meet the requirements of patentability set forth in the Patent Act of 1952 (35 U.S.C. § 100 et seq.), and (v) for damages against Defendants for their violations of N.J. Rev. Stat. § 56:8-2, and allege as follows:

### I.     THE PARTIES

1.     Plaintiff Gaiatop is a New Jersey limited liability company with a place of business at 12 Fisher Lane, Franklin Park, NJ 08823.

2.     Plaintiff Xiantao is a Chinese company with a place of business at #26 Dahonglu, Community Service Center, Ganhe Blvd., Ganhequ, Xiantaoshi, Hubei Province, P.R. China 433115.

3.     Defendant Jisulife-NA is a Chinese company with a place of business at Room 301, Building B, No. 17, Yongxiang East Road, Ma'antang Community, Bantian Street, Longgang District, Shenzhen, Guangdong, P.R. China.

4.     Defendant Li is a Chinese resident with a place of business at Room 301, Building B, No. 17, Yongxiang East Road, Ma'antang Community, Bantian Street, Longgang District, Shenzhen, Guangdong, P.R. China.

5.     Upon information and belief, Defendants engaged in interstate commerce involving the State of New Jersey by distributing their neck fan and handheld fan products via Amazon online platform to New Jersey residents and through Walmart stores with locations within the State of New Jersey (*Exhibit 3*).

### II.     JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. §§ 1, et seq., 28 U.S.C. § 2201 (Declaratory Judgment Act), and 35 U.S.C. §§ 100 et seq.

7.　　This Court has personal jurisdiction over Defendants because they have engaged business activities in violation of the antitrust laws with transactions in the State of New Jersey and affecting residents of the State of New Jersey.  Defendants also conspired to other sellers to fix price on neck fans sold to consumers in the State of New Jersey.  15 U.S.C. 15 states that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

8.　　This Court may also assert personal jurisdiction over Defendants under FRCP, Rule 4(k)(2), which prevents foreign defendants that have violated United States Federal laws from escaping suit for lack of personal jurisdiction.

9.　　This Court has supplemental jurisdiction over Count IV pursuant to the provisions of 28 U.S.C. §1367.

10.　　Venue is proper in this Court pursuant to 28 U.S.C. §1391.  Defendants conspired with others to engage in unfair competition and price fixing in the neck fan market in the United States and in this judicial district.

### III.　　FACTS

11.　　Defendant Jisulife-NA is the owner of the '083 Patent, the '602 Patent, the '625 Patent, the '080 Patent, the '250 Patent, the '947 Patent and the 'D982 Patent ("the Patents in dispute"). Defendant Li is the inventor of Defendants' Patents.

12. Jisulife-NA manufactures the neck fans and sell them on Amazon, Walmart and other platforms. Jisulife-NA conspired with Li and other neck fan sellers to control and monopolize the neck fan market in the United States.

13. On information and belief, Jisulife-NA and several neck fan sellers signed agreements to control the price of neck fans in the United States and such agreements are horizontal price-fixing agreements because Jisulife-NA and the other sellers sell neck fans into the same market in the United States. (see copy of the supplementary agreement on authorization and licensing of neck fans, hereinafter "License Agreement", *Exhibit 4*).

14. Specifically, Article 1.1 of the Licensing Agreement defines that "MAP price or minimum advertising price, refers to the minimum price allowed for a product in all advertising, marketing and sales activities, including but not limited to exclusive membership inside and outside the site, Coupon, Deal, flash sale price and other forms of discounted prices."

15. Article 1.2 of the Licensing Agreement requires that "[T]he first 20 products of Party B in category (Amazon Personal Fan) shall not be priced lower than US $33.99, and the MAP price shall not be lower than US $26.99.

16. Article 1.3 of the Licensing Agreement also requires that "[F]or products of Party B in Category 3 and below, the price shall not be less than US $29.99, and the MAP price shall not be less than US $26.99.

17. To impose further control to fix the price, Article 1.4 of the Licensing Agreement further requires that "[P]arty B shall promptly adjust the pricing on all platforms upon notification from Jisulife."

18. Jisulife-NA also focuses its price fixing scheme to markets in North America as Article 1.4 of the Licensing Agreement demands that "[T]his agreement is licensed and authorized only for the Amazon platform, but the pricing and MAP price standards apply to all online and offline platforms across North America (including non-Amazon platforms) and related resale activities."

19. Jisulife-NA imposed more onerous restraint on the neck fan market by eliminating sales on all non-amazon platforms as Article 1.4 of the Licensing Agreement specifies that "[F]or all other unauthorized platforms, including but not limited to Walmart (Walmart) and other overseas cross-border e-commerce platforms and offline channels, Party B must immediately remove all relevant products from these platforms after signing this agreement and properly handle their inventory on unauthorized platforms within the agreed period without disrupting market order."

20. In Article 1.4 of the Licensing Agreement, Jisulife-NA then gives itself the authority to enforce its price fixing scheme by demanding that "[I]f Party B fails to comply with the above provisions and continues to sell the Neck Fan series products on unauthorized platforms, regardless of whether they have obtained authorization from the Amazon platform, this agreement will automatically terminate without further notice. Party B understands and agrees that violating the conditions stated in this clause may result in immediate termination of authorization and assumes all legal consequences thereof."

21. Jisulife-NA emphasizes the importance of collusion on effectively fixing the price on the neck fan market as Article 1.5 of the Licensing Agreement required that "[P]arty B acknowledges that maintaining the agreed price remains its responsibility under this agreement, even in the event of malicious follow-up sales by third parties. Party B shall take all reasonable measures, including but not limited to utilizing tools and services provided by the Amazon platform, to prevent and resolve any violations of the agreed price."

22. Jisulife-NA again acts as the enforcer of market price by demanding that "[I]f Party B fails to comply with the agreed price or fails to resolve the issue of third-party follow-up sales, Jisulife has the right to unilaterally terminate this agreement and demand compensation for all losses incurred as a result."

23. Upon information and belief, Jisulife-NA has initiated 12 legal actions in the Federal District Court for the Northern District of Illinois to implement its effective control over the markets on products such as neck fans and handheld fans and to impose price control and other restraints over those markets. A list of the legal actions is shown in the table below:

Legal Actions Taken By Jisulife-NA in NDIL

| Case #1 | 1:23-cv-14016 | Shenzhen Jisu Technology Co., LTD v. The Entities and Individuals Identified in Annex A |
|---|---|---|
| Case #2 | 1:24-cv-02948 | SHENZHEN JISU TECHNOLOGY CO., LTD v. The Entities and Individuals Identified in Annex A |
| Case #3 | 1:24-cv-04152 | SHENZHEN JISU TECHNOLOGY CO., LTD v. THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A |
| Case #4 | 1:24-cv-02948 | SHENZHEN JISU TECHNOLOGY CO., LTD v. The Entities and Individuals Identified in Annex A |
| Case #5 | 1:23-cv-15914 | Shenzhen Jisu Technology Co Ltd. v. The Partnerships And Unincorporated Associations Identified On Schedule A |
| Case #6 | 1:24-cv-04134 | Shenzhen Jisu Technology Co., Ltd. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto |
| Case #7 | 1:24-cv-04134 | Shenzhen Jisu Technology Co., Ltd. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto |
| Case #8 | 1:24-cv-05215 | Shenzhen Jisu Technology Co., Ltd. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A |

| Case #9  | 1:24-cv-05905 | Shenzhen Jisu Technology Co., Ltd. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A |
| Case #10 | 1:24-cv-06182 | Shenzhen Jisu Technology Co., Ltd. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A |
| Case #11 | 1:24-cv-07647 | Shenzhen Jisu Technology Co., Ltd. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A |
| Case #12 | 1:24-cv-07810 | Shenzhen Jisu Technology Co., Ltd. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A |

24. Upon information and belief, Jisulife-NA has forced at least twelve sellers to join Defendants' price fixing scheme.

25. Jisulife-NA demanded that the Plaintiffs join the price fixing scheme or face patent infringement lawsuit(s) based on the Patents in dispute, which are invalid, unenforceable and/or cannot be infringed by Plaintiffs' neck fan and/or handheld fan products.

### COUNT I.     VIOLAIONS OF U.S.C. 15 U.S.C. § 1 ET SEQ.

26. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

27. Defendants colluded with several other sellers of neck fans[2] by entering horizontal price-fixing agreements and place other restraints on the neck fan market in the United States.

28. Defendants' acts violated 15 U.S.C. § 1 which requires that "[E]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

29. The Supreme Court has adopted the rule of reason for adjudicating resale price maintenance agreement on a case-by-case basis. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 127 S. Ct. 2705, 2710 (2007). Defendants' price fixing agreements with several other sellers must be adjudicated as violating 15 U.S.C. § 1 because these price-fixing agreements are "horizontal agreements" as Jisulife-NA compete with its price-fixing counterparts in selling neck fans. The Supreme Court took a more lenient approach to a "vertical" contract, made between parties at different levels of the supply chain. *Id. at 2714* (noting the "differences in economic effect" between horizontal and vertical price restraints).

---

[2] Jisulife-NA filed at least 12 lawsuits against more than 300 sellers of neck fans and/or handheld fans in the past few years. Jisulife-NA closed down most of the sellers' businesses and signed price-fixing agreements with several sellers who are willing to collude with Jisulife-NA to control and to monopolize the neck fan market in the United States together. On information and belief, Jisulife-NA plans to sign price-fixing agreements with 15 other sellers while continue to sell the neck fans in its own online and offline stores.

30. Defendants' collusion with more than one seller to fix the price and to place other restraints on the neck fan market also violated the antitrust laws under the standard of the Third Circuit Court which held that "[I]t is a violation of the antitrust laws for a patentee to issue more than one license containing price-fixing provisions. *Newburgh Moire Co. v. Superior Moire Co.*, (3d Cir. 1956) 237 F. (2d) 283.

31. The United States Court of Appeals for the Third Circuit also held that defendants' patent position does not "barred plaintiff's antitrust damage claims without evaluating plaintiff's challenges to the patent's validity and infringement as to plaintiff's product." *Fresenius Kabi USA, LLC v. Par Sterile Prods.*, LLC, No. 20-1618, 2021 WL 80616 (3d Cir. Jan. 11, 2021).

32. Moreover, Defendants' actions violated 15 U.S.C. § 2 which states that "[E]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court."

33. Defendants' violations of 15 U.S.C. § 1 and/or 15 U.S.C. § 2 caused substantial damages to Plaintiffs.

### COUNT II.   DECLARATORY JUDGMENT OF PATENT UNENFORCEABILITY (PATENT MISUSE)

34. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

35. Defendants' used the Patents in dispute to engage in price-fixing scheme to violate the antitrust laws and such violations constitute patent misuse and shall render the Patents in dispute unenforceable/invalid. The Third Circuit Court held that "[A]t worst, we think that the patent laws were not intended to empower a patentee to grant a plurality of licenses, each containing provisions fixing the price at which the licensee might sell the product or process to the company, and that, if a plurality of licenses are granted, such provisions therein are prohibited by the antitrust laws. (*Newburgh Moire Co. v. Superior Moire Co. at 294*).

36. Therefore, the Patents in dispute in this case are invalid and/or unenforceable under the patent misuse doctrine for Defendants' violations of the antitrust laws.

## COUNT III.   DECLARATORY JUDGMENT (NON-INFRINGEMENT)

37. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

38. Plaintiffs developed their neck fans and handheld fans based on the prior arts, including Japanese Patent No. JP 2019-105266 ("the 'JP266 Patent," *Exhibit 5*) and on their own experience and these products do not/cannot infringe any of the '083 Patent, the '602 Patent, the '625 Patent, the '080 Patent, the '250 Patent and the '947 Patent because none of these patents can be interpreted to cover Plaintiffs' products without also read on the prior art references.

## COUNT IV.   DECLARATORY JUDGMENT (PATENT INVALIDITY)

39. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

40. The '083 Patent, the '602 Patent, the '625 Patent, the '080 Patent, the '250 Patent and the '947 are invalid as being obvious over the 'JP266 Patent and other prior art references under 35 U.S.C. § 103.

41. The 'D982 Patent is also invalid as being anticipated by or rendered obvious by Chinese Patent No. CN 304477734 ("the 'CN734 Patent," *Exhibit 6*).

## COUNT V.   VIOLATION OF N.J. REV. STAT. § 56:8-2

42. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

43. Defendants' price fixing scheme to control and to restrain the neck fan market are unconscionable, abusive, and/or deceptive and therefore is unlawful practice under N.J. Rev. Stat. § 56:8-2 regardless "whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice;…"

44. Defendants' unlawful practice caused damages to Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For judgment in favor of Plaintiffs against Defendants on all claims;

B. Declaring that the '083 Patent, the '602 Patent, the '625 Patent, the '080 Patent, the '250 Patent, the '947 Patent and the 'D982 Patent are unenforceable/invalid under the patent misuse doctrine for violating the antitrust laws;

C. Declaring that the claims of the '083 Patent, the '602 Patent, the '625 Patent, the '080 Patent, the '250 Patent, the '947 Patent and the 'D982 Patent are not/cannot be infringed by Plaintiffs' products;

D.       Declaring that the claims of the '083 Patent, the '602 Patent, the '625 Patent, the '080 Patent, the '250 Patent, the '947 Patent and the 'D982 Patent are invalid for failing to satisfy the criteria of 35 U.S.C. §§ 102, 103 and/or 112;

E.       Awarding Plaintiffs damages due to Defendants' improper acts, including statutory damages;

F.       Awarding Plaintiffs their costs of suit, including the costs of experts and reasonable attorneys' fees, due to the exceptional nature of this case, or as otherwise permitted by law;

G.       Awarding Plaintiffs statutory, compensatory, general and special, consequential and incidental damages in an amount to be determined at trial;

H.       Awarding Plaintiffs exemplary, punitive, statutory, and enhanced damages;

I.       Awarding pre- and post- judgment interest; and

J.       Awarding Plaintiffs such other and further relief as this Court deems is just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

Respectfully Submitted

By:   /s/*lance liu*
       Lance Liu, Esq.
       15 Minuteman Circle
       Southbury, CT 06488
       NJ Bar No. 001331999
       Tel: (203)706-9536
       Fax: (347)696-4111
       Lanceliu2000@gmail.com

Dated: January 19, 2024       Attorney for Plaintiffs